Good morning, ladies and gentlemen. This is the 12th interview to the 34th Judiciary of Mr. Francis. Ladies and gentlemen, sir, two minutes for rebuttal on behalf of the court. Mr. Francis is a counter-consistent of the Constitutional States. He was convicted by a jury that is considered to be unflagging. As a juror, the only two jury members who were held in America were struck by the prosecution. Mr. Francis, you are under all four presumptions, all four premature strikes. Although we're not challenging the strike of Ms. Evans, her thought of the future danger to the prosecutor is irrelevant to our contest. She is the only other juror with whom you can teach the discussion of a pre-court recursion. Excuse me. And, of course, this was in the context of a fairly unusual exteriorly contention. Regulations aren't here. It's noted in the Supreme Court case, the prosecutor, June 18th, stated that she was in only 16 cases in which she had served. Well, I don't know if you've seen the case. It's a case of a juror and a convicted prosecutor. You're a senior. Your Honor, I'm sure you're thinking about this. She's got a bunch of questions. She's going to get to all of them. I mean, it's a great case. Your Honor, I think your conversation with the director shows that she was maybe a little bit more concerned about these questions, and in fact, her jurors and recorders were. Your Honor, she expressed that she is the only one who, first of all, the prosecutor called her out, and she said, this is why it's not an expensive case. And she actually saw the first trial, which is noted a little further on in the question. Indeed, the prosecutor mistook you, but the prosecutor continues. The judge's wife felt compelled to intervene, and the prosecutor from this continued calling her out. Your Honor, I'm wondering, has this happened to any other jurors? However, the judge also noted that knowing the facts of the prosecutor, so the fact that the prosecutor chose not to consult with any of the jurors, not to consult with any of the jurors, she had the strength and the ability to, I don't know if that includes you, Your Honor, to look at the jurors who are still there, who are continuing to charge, who have been sitting at the border, who have been out there for years, just to see the prosecutor. Absolutely, Your Honor. The jurors are out there in charge. I mean, she, I mean, she was kind of fed up with the prosecutor's calls to just sit here and sort of make social instructions. And I think that in person, I think that she would have been able to do that. Your Honor, that would be legitimate, but the problem would be if there are other jurors and if you're pointing to records that show that there was violence against the prosecutor. Your Honor, the problem with this record is that it establishes that there has been a case where there has been a determination, certainly a notice of intent, or a determination, or a determination, as it says here, as to the scope of the incident. On the record, we see that there was some violence. There's been no suspicious charges made or any violence. Your Honor, it's just, it's absolutely not a determination that's being made by jurors. What we do know is that she was allowed to be there. I'm not sure if you know, but she was allowed to be there. She was allowed to be there. I'm not sure if you know, but her brother, he was allowed to be there. So, I'm not sure what the court's decision is. In the, after the case that you heard, this gentleman, this young guard here, after he was charged, they gave him an opportunity to be back in his studio. And the judge says, well, she's got a problem. You have a problem. And he says, she's like, oh, excuse me. And the prosecutor says, well, how am I going to trust you? And the judge says, well, it's up to you, Your Honor. Which indicates that nobody in that courtroom has any issues with the prosecution. They're both here. It's not more than an example. That's what we want to commemorate with this situation. And that's the reason why this is so important. We want to continue to do this. And we continue to do it. And we hope you can come back. The other thing is, is actually, I mean, this is our situation. Our legal system is changing. It's not an issue. I believe that the prosecution's part of the issue is we have a jury selection. It's the legal system that we need to stay in our legal system. And so, it does subsequent jury examinations when there's a new situation that changes. We should do these jury examinations in terms of certain things. So, it's part of your records. And it's part of the system. So, we need to see, we need to consider each other, each other, each other, each other, each other, each other, each other, each other, each other, each other,  each other, each other,               Hi. Hi.   And I live in Los Angeles, Arizona. And I serve under the attorney general's office. I serve under the attorney general's office. I serve under a lawyer's office, the attorney general's office, the attorney general's office is not in a good place.   and then the focus of this following is the language of depression and the traditional behaviors, right? And those two are thinking those two are thinking that's what made you do this lawyer that comes, that drags women up to speak to their patients. That she's confusing everybody for her own sake. That she's pushing, that she's pushing our enemies to wear their traits like we're entreated to do, she's listen to us, she's using her advise and counsel this way to maybe know five things in orderorry and the other joint is to play with the record and judgements from the journal such as determination, those traits are not as much obvious but because of the fact that this process you have you have this interaction with the juror so obviously you might not express this basically but there will be many people that will exhaust the journal judges to people that might not be able to answer this question. If I may point a judgment that I would like to reserve my time and that is why we filed this petition 20 years ago for dispossession of citizens of this country my colleagues in this country  to  dispossessed of this country and if not I will  you to take your responsibility and dispose yourself of this country. Please remain seated. Thank you. everybody. I thank you. Thank you. Thank you. Thank you. Yeah, I just wanted to say thank you. I think it's a difficult job. It sounds difficult. There are a lot of others that are doing it that couldn't do it. So it's a hard job. But I think the job is so simple. It's a difficult job. But I think it's a nice job. It's a wonderful job. And I think it's a wonderful thing to do. I think it's a great job. I appreciate it. I appreciate it.
judges: Silverman, Fisher, Tallman